In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2935

Santiago Martinez-Camargo,

Petitioner,

v.

Immigration and Naturalization Service,
John D. Ashcroft, Kevin D. Rooney, and
Brian Perryman,

Respondents.

Appeal from the Board of Immigration Appeals
A75-818-973-Chicago.

Argued February 7, 2002--Decided March 5, 2002


   Before Flaum, Chief Judge, and Bauer and
Easterbrook, Circuit Judges.

   Flaum, Chief Judge.  The Board of
Immigration Appeals ("BIA") dismissed
Petitioner Santiago Martinez-Camargo's
appeal and ordered him deported from the
United States. Martinez-Camargo appeals
that decision, and, for the reasons
stated herein, we affirm.

I.  Background

   On June 16, 1997, Martinez-Camargo and
an acquaintance were sitting near a
vacant parking lot in Summit, Illinois
while Martinez-Camargo's friend changed
the oil in his car. A police officer
approached, instructed the men that they
could not work in the vacant lot and
asked for identification. Camargo-
Martinez questioned why he had to provide
identification when he "was just sitting
there." The officer responded by radioing
for support, and several patrol cars
arrived on the scene. Immigration and
Naturalization Service ("INS") Officer
Charles Suchy, who regularly rode with
Summit police officers as part of an INS
task force, was among those who responded
to the call.

   When Suchy arrived at the scene, Summit
police officers were conversing with

Martinez-Camargo. Suchy testified before the Immigration Judge ("IJ") that the Summit police officers requested his assistance to translate for Martinez-Camargo, who spoke broken English. Suchy identified himself as an INS agent and asked Martinez-Camargo to produce a driver's license, as well as a second state identification card. Suchy also requested other biographical data, including Martinez-Camargo's date of birth, his address and where he was born. Martinez-Camargo responded that he was born in Mexico and resided illegally in the United States.

Suchy arrested Martinez-Camargo, handcuffed him, placed him in a police vehicle and transported him to the Summit Police Department. Upon arrival, Suchy photographed and fingerprinted Martinez-Camargo, and administered INS form I-826, which is a notice of rights and request for disposition. After inquiring whether Martinez-Camargo understood his rights as explained within form I-826, Suchy processed Martinez-Camargo by preparing INS Form I-213 (record of deportable alien).

The INS commenced removal proceedings by filing a Notice to Appear on June 16, 1997. Martinez-Camargo appeared for a removal hearing on October 14, 1997, at which time Martinez-Camargo indicated that he intended to file a motion to suppress all evidence resulting from his arrest. The IJ held a hearing regarding the motion to suppress on March 27, 1998. Martinez-Camargo argued that his arrest constituted an egregious violation of both the Fourth and Fifth Amendments to the United States Constitution. In addition, Martinez-Camargo maintained that his arrest violated 8 C.F.R. sec. 287.3(a), which states:

An alien arrested without a warrant of arrest under the authority contained in section 287(a)(2) of the Act will be examined by an officer other than the arresting officer. If no other qualified officer is readily available and the taking of the alien before another officer would entail unnecessary delay, the arresting officer, if the conduct of such examination is a part of the duties assigned to him or her, may examine the alien.

The IJ held that the exclusionary rule was inapplicable in immigration proceedings and that Martinez-Camargo failed to demonstrate the egregious constitutional violation necessary to exclude evidence in deportation proceedings. The IJ noted that Officer Suchy was riding with the Summit Police Department as part of an immigration task force, that officers requested his assistance in translating, and that his sole reason for arriving on the scene was to investigate an allegation of a street disturbance. In addition, the IJ ruled that there was "substantial compliance with the Code of Federal Regulations under Section 287.3," and thus denied Martinez-Camargo's motion to suppress. The IJ accordingly ordered Martinez-Camargo deported.

Martinez-Camargo appealed to the BIA and raised the same two issues. The BIA affirmed the order of deportation, holding that Officer Suchy had reasonable articulable suspicion to question Martinez-Camargo because Martinez-Camargo had already been detained by local officers. Moreover, the BIA reasoned that even if Officer Suchy instigated a "second stop" by questioning Martinez-Camargo regarding his citizenship, the brief interrogation was not an egregious constitutional violation warranting exclusion. With respect to Officer Suchy's violation of Section 287.3, the BIA held that Martinez-Camargo presented no additional evidence to establish that his admissions were coerced or otherwise prejudiced by the circumstances of his examination. As such, the evidence obtained by Officer Suchy was inherently trustworthy and admissible to prove alienage and deportability.

One member of the BIA panel dissented. The dissenting Board Member wrote that the violation of the federal regulation governing aliens arrested without a warrant undermined the admissibility of INS Form I-213 (record of deportable alien). Because the INS failed to introduce evidence that another officer was unavailable, or that unnecessary delay would result, the dissenting Board Member stated that the regulatory violation necessitated exclusion of the Form I-213 and a remand to the Immigration Judge. Martinez-Camargo appeals.

II.  Discussion

   A.  Regulatory Violation

   Both parties agree that the INS violated 8 C.F.R. sec. 287.3 when Officer Suchy arrested and examined Martinez-Camargo. The question we must decide is what effect the regulatory violation has on the proceedings below. Martinez-Camargo asks this court to suppress the Form I-213, arguing that the procedural protections in sec. 287.3 derive from fundamental constitutional rights. In response, the INS maintains that although Officer Suchy may have violated sec. 287.3, Martinez-Camargo failed to allege or to prove that he suffered prejudice as a result of Officer Suchy's conduct.

   Relying on Matter of Garcia-Flores, 17 I. & N. Dec. 325 (B.I.A. 1980), the BIA dismissed Martinez-Camargo's appeal finding that he was not prejudiced by Officer Suchy's conduct. Garcia-Flores involved a 33-year-old citizen of Mexico who challenged the admission of two immigration forms purporting to establish her deportability. Garcia-Flores argued that the evidence was inadmissible because INS officials had not warned her of her rights under 8 C.F.R. sec. 287.3. At the time, sec. 287.3 provided that INS officials must advise an alien arrested without a warrant (1) of the reason for her arrest, (2) of the right to be repre sented by counsel at no expense to the government, and (3) that any statement may be used against her in a subsequent proceeding. 8 C.F.R. sec. 287.3 (1977). There was no dispute that the arresting officer failed to advise Garcia-Flores of her right to be represented by counsel.

   In dismissing Garcia-Flores' appeal, the BIA acknowledged a tension between two general principles stemming from cases interpreting the effects of regulatory violations. While courts have consistently demanded governmental compliance with administrative regulations designed to safeguard individual interests, see United States ex rel. Accardi v. Shaugnessy, 347 U.S. 260 (1954); Bridges v. Wixon, 326 U.S. 135, 152-53 (1945), not every violation of an agency regulatory requirement results in the invalidation of all subsequent agency action or the exclusion

of evidence from administrative proceedings. See United States v. Caceres, 440 U.S. 741 (1979); American Farm Lines v. Black Ball Freight Service, 397 U.S. 532 (1970). Based upon these precedents, the BIA established a two-pronged analytical framework to assess when the INS's failure to adhere to its own administrative regime results in invalidation of the agency's action. First, the regulation in question must serve a "purpose of benefit to the alien." Garcia-Flores, 17 I. & N. at 328 (citing United States v. Calderon-Medina, 591 F.2d 529, 531 (9th Cir. 1979)). If it does, the regulatory violation renders the proceeding unlawful only if the violation prejudiced interests of the alien protected by the regulation. Id. To assess whether the alien suffered prejudice, the BIA reasoned:

Where compliance with the regulation is mandated by the Constitution, prejudice may be presumed. Similarly, where an entire procedural framework, designed to insure the fair processing of an action affecting an individual is created but then not followed by an agency, it can be deemed prejudicial.

Id. at 329. The BIA then ruled that the violation of sec. 287.3 was not one "in which the claimed regulatory violation may be presumed to have prejudiced the respondent." Id. As a consequence, the BIA remanded the case to allow the respondent to demonstrate prejudice.

Our Circuit has not yet considered the appropriateness of the analytical framework identified in Garcia-Flores. However, two of our sister circuits have approved of the approach adopted by the BIA in Garcia-Flores and followed in this case. See Montero v. INS, 124 F.3d 381, 386 (2d Cir. 1997) ("if the regulation does not affect a fundamental right derived from the Constitution, the proceeding will be invalidated only if the petitioner shows prejudice."); Delgado-Corea v. INS, 804 F.2d 261, 262-63 (4th Cir. 1986). We find nothing unreasonable in the BIA's approach and agree that its analysis strikes the proper balance between recognizing the need for administrative agencies to follow their own rules with the practical reality that not every agency violation impacts an alien's substantive rights.

In this case, there can be no question that Officer's Suchy's actions did not impact Martinez-Camargo's substantive rights. Martinez-Camargo's primary complaint-- indeed, his only complaint-- is that Officer Suchy both arrested and examined him. Martinez-Camargo must therefore demonstrate that had another officer interviewed him (the "right" to which he was entitled under sec. 287.3), the INS would not have discovered his alienage or immigration status. The facts in this case belie such a conclusion. Martinez-Camargo did not admit his immigration status to Officer Suchy during the interview process, but rather when Officer Suchy initially arrested him. Thus, Officer Suchy's examination, during which he memorialized Martinez-Camargo's prior statements on INS Form I-213, did not generate any additional information. There was no coercion, and no allegation that Martinez-Camargo's statements were involuntarily given. In short, the record fully supports the BIA's holding regarding the absence of prejudice, and we find no error in the BIA's reasoning or conclusion.

Despite these facts, Martinez-Camargo argues that a violation of sec. 287.3 falls into the limited category of cases where prejudice should be presumed. As a general rule, the BIA in Garcia-Flores found that an alien alleging a regulatory violation must prove prejudice. However, the BIA also stated that an agency action can be deemed prejudicial when it violates the Constitution, or when the agency disregards an entire procedural framework "designed to insure the fair processing of an action affecting an individual." Id. at 329.

We find that the regulatory violation at issue in this case is not one that can be deemed prejudicial. There can be no question that the "right" at stake here is not constitutionally mandated. Nor is this a case involving the complete disregard of a framework designed to insure the fair processing of an individual. To be sure, the BIA failed to adhere to one aspect of sec. 287.3, but Martinez-Camargo was advised of his right to counsel, notified of the charges against him, and instructed that any statements made to the officer could be used against him in a subsequent deportation proceeding. See 8 C.F.R. sec.

287.3 (b)(c) and (d). The Constitution requires nothing more. Indeed, the Supreme Court has held that where an administrative regulatory violation does not adversely affect a petitioner's substantive rights an exclusionary remedy is not available. See United States v. Caceres, 440 U.S. 741 (1979). In that case, the Supreme Court acknowledged that "where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures," Caceres, 440 U.S. 751 n. 14 (citing Morton v. Ruiz, 415 U.S. 199, 235 (1974) (emphasis added)), but, as we have already discussed, Officer Suchy's conduct in this case did not impact Martinez-Camargo's constitutional rights.

## B.  Fourth Amendment Violation

Martinez-Camargo next argues that his arrest constituted an egregious violation of the Fourth Amendment warranting suppression of the evidence against him. While the exclusionary rule is ordinarily inapplicable to deportation proceedings, INS v. Lopez-Mendoza, 468 U.S. 1032, 1038-39 (1984), it may apply in cases involving "egregious violations of the Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained." Id. at 1050-51. Martinez-Camargo argues that an egregious violation occurred in this case because INS officers questioned him in the absence of reasonable suspicion of unlawful alienage.

We need not reach the question of egregiousness because Officer Suchy's actions did not offend the Constitution in any respect. In assessing the validity of an investigatory stop, we examine the reasonableness of the officer's actions based upon the totality of the circumstances. United States v. Cortez, 449 U.S. 411, 417-18 (1981). Here, Summit Police Officers detained Martinez-Camargo pursuant to a routine criminal disturbance call. Martinez-Camargo does not challenge this initial seizure, but rather Officer Suchy's later questions regarding his alienage. Questions, however, are neither searches nor seizures, United States v. Childs, 277 F.3d 947, 949 (7th Cir. 2002), so while Officer Suchy's questions may be considered in assessing the

reasonableness of Martinez-Camargo's detainment, they did not constitute a seizure independent and distinct from the original investigatory stop. With these principles in mind, we find that Officer Suchy's questions were not unreasonable given their limited breadth and scope. Officer Suchy questioned Martinez-Camargo only after Summit police officers requested his assistance in translation. When Officer Suchy became involved, he asked Martinez-Camargo routine biographical questions, such as his name, birth date and place of birth. Such interrogation--if it can even be called that--is not unreasonable, and it certainly does not rise to the level of an egregious violation of the Fourth Amendment. Accordingly, the BIA properly rejected this argument.

III.  Conclusion

  Because Martinez-Camargo has failed to prove that the violation of 8 C.F.R. sec. 287.3 prejudiced him, or that Officer Suchy's actions constituted an egregious violation of the Fourth Amendment, we AFFIRM the decision of the BIA dismissing Martinez-Camargo's appeal.