# In the
# United States Court of Appeals
## For the Seventh Circuit
————————

No. 07-2462

MEER S. ALI,

*Petitioner*,

v.

MICHAEL B. MUKASEY, Attorney General
of the United States,

*Respondent*.

————————

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A78-857-590

————————

ARGUED FEBRUARY 14, 2008—DECIDED SEPTEMBER 8, 2008

————————

Before MANION, ROVNER, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Meer Shahid Ali entered the United States on a valid work visa that authorized him to work for a consulting company. According to an agent for the then-Immigration and Naturalization Service, Ali admitted to working for a second company beginning in March 2002. That was three months before the second company filed a petition on his behalf, a filing that the

government agrees would have allowed him to work there lawfully. We conclude that the immigration judge was justified in finding that Ali was deportable for beginning to work for the second company before he could lawfully do so and that a reference to March "2000" on a form completed by the agent was a typographical error. We cannot review Ali's claim that the same agent should not have both arrested and examined him because Ali failed to exhaust his administrative remedies for this claim. Therefore, we deny the petition for review.

## I. BACKGROUND

Ali, a native of India, came to the United States in July 2000 on an H-1B visa. This visa allowed him to work for the Everest Consulting Group until May 15, 2002, and the authorization to work at Everest was later extended through January 15, 2003.

On June 27, 2002, another company, Newton Food Mart, also known as T & L Foods, filed an H-1B petition on Ali's behalf. About two months later, on August 20, 2002, while the T & L petition was still pending, the Immigration and Naturalization Service executed a federal search warrant at T & L Foods, and Ali was there. Special Agent Timothy O'Sullivan interviewed Ali and completed a Form I-213 ("Record of Deportable/Inadmissible Alien"). Among the typewritten notes on the form that Special Agent O'Sullivan signed are: "The subject claimed he had been working for T & L Foods for 40 hours a week since March 2002" and "On or about March 2000, the subject began employment at T & L Foods and has been so em-

ployed since that time therein in violation of his admittance."

The government subsequently instituted deportation proceedings against Ali. Crediting Special Agent O'Sullivan's testimony, an immigration judge found Ali deportable for working at T & L Foods before he was legally entitled to do so. The Bureau of Immigration Appeals affirmed, and Ali filed a petition for review with our court.

## II. ANALYSIS

### A. Compliance with H-1B Visa Requirements

Ali maintains that substantial evidence does not support the BIA's conclusion that he violated the conditions of his H1-B visa. The "H1-B" visa program takes its name from 8 U.S.C. § 1101(a)(15)(H)(i)(b), which sets forth eligibility requirements for "specialty occupation" visas like the one Ali received. *See also* 8 C.F.R. § 214.2(h)(ii)(B) (describing H-1B classification); *Siam Corp. v. Chertoff*, 484 F.3d 139, 144-45 (1st Cir. 2007) (discussing H-1B specialty occupation visas); *Royal United States v. Ramirez*, 420 F.3d 134, 137 (2d Cir. 2005) (same); *Venkatraman v. REI Systems, Inc.*, 417 F.3d 418, 422 (4th Cir. 2005) (same). A "specialty occupation" generally means one that requires "(A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1).

The H-1B visa comes with certain conditions. As relevant here, an alien admitted pursuant to an H-1B nonimmigrant visa may generally be employed "only by the petitioner through whom the status was obtained." 8 C.F.R. § 274a.12(b)(9). An alien holding an H-1B visa may, however, begin working for a different employer "upon the filing by the prospective employer of a new petition on behalf of such [alien]," 8 U.S.C. § 1184(n)(1), so long as the alien was lawfully admitted, the employer timely filed a nonfrivolous petition, and the alien had not engaged in unauthorized work before the petition's filing, 8 U.S.C. § 1184(n)(2). If those conditions are met, employment authorization continues under the initial visa until the new petition is adjudicated. *See* 8 U.S.C. § 1184(n)(1).

In this case, the government maintains that although Ali could have lawfully begun working for T & L Foods on June 27, 2002, the date when that company filed a new petition on Ali's behalf, Ali was deportable because he admitted to working for T & L before it had submitted its petition. The law is clear that "an alien who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status in which the alien was admitted . . . or to comply with the conditions of such status, is deportable." 8 U.S.C. § 1227(a)(1)(C)(i). The question here is whether Ali complied with the conditions of the H-1B visa he received to enter the United States in July 2000.

During the hearing before the immigration judge, Special Agent O'Sullivan testified that on the day Ali

was taken into custody, Ali admitted he had been working for T & L Foods for approximately 40 hours per week beginning in March of 2002. Working at T & L on August 20, 2002, the day of the raid, did not alone render Ali deportable, as T & L had filed a new petition on his behalf in June 2002 that allowed him to begin working there as of the petition's filing. But if Ali had started working for T & L in March, then he began working for T & L three months *before* it filed its petition on his behalf in June 2002. As a result, he would be deportable for failing to comply with the conditions of his visa.

Ali, however, seizes on a discrepancy in the Form I-213 that Special Agent O'Sullivan completed. On the form, Special Agent O'Sullivan stated in one place that Ali said he had been working for T & L since March 2002, while a few lines later the form states that Ali said he began working at T & L in March 2000. Special Agent O'Sullivan testified at the hearing that the "2000" notation on the form reflected a typographical error and that the correct date was March 2002. Ali maintains that the inconsistency on the form renders it unreliable. And because Special Agent O'Sullivan relied on his form when he testified at the hearing, Ali maintains that Special Agent O'Sullivan's testimony cannot be credited. We disagree.

The immigration judge was justified in concluding that the form's single reference to March "2000" was a typographical error. A statement that Ali had worked at T & L since March 2000 would not make sense in this case as

Ali did not arrive in the United States until July of that year, a fact noted elsewhere on the form. Moreover, we would be more concerned about the discrepancy on the form if using one date over the other affected the result. In this case, however, whether Ali had started working at T & L in March 2000 or March 2002, the end result is the same. Both dates are before T & L filed its petition on Ali's behalf, so Ali could not have lawfully started working at T & L on either date. *Cf. Rosendo-Ramirez v. I.N.S.*, 32 F.3d 1085, 1088-89 (7th Cir. 1994) (finding no error in admission of Form I-213 as evidence of deportability even though the form was carelessly drafted).

Finally, the letter Ali submitted into evidence from Everest Consulting Group does not help him. This letter, dated May 15, 2002, states that Ali was a full-time Everest employee and had been working for the company since August 22, 1999 as a software engineer. Even so, that does not foreclose the possibility that Ali was working for both Everest and T & L at the same time, and there is no evidence in the record from T & L, Ali or anyone else that Ali had *not* been working at T & L since March 2002. Although working two jobs is by no means easy, it is also a reality for many. On this record, then, the immigration judge was justified in finding that Ali began working at T & L in March 2002, and we decline to set aside the determination that Ali was deportable for beginning to work at T & L before the terms of his visa allowed him to do so.

**B.  Arrest and Examination by Same Agent**

Ali also argues that Special Agent O'Sullivan violated 8 C.F.R. § 287.3(a), which provides that "an alien arrested without a warrant of arrest . . . will be examined by an officer other than the arresting officer." The provision further states that "[i]f no other qualified officer is readily available and the taking of the alien before another officer would entail unnecessary delay, the arresting officer, if the conduct of such examination is a part of the duties assigned to him or her, may examine the alien." *Id.*; *see also Martinez-Camargo v. I.N.S.*, 282 F.3d 487, 490-92 (7th Cir. 2002). Ali maintains that because he was arrested during the execution of a search warrant, not pursuant to a "warrant of arrest," the regulation governs.

We cannot reach Ali's argument, however, because his brief to us marks the first time that he raised this argument. An alien must exhaust all available administrative remedies that are available as of right before we can review a claim. *See* 8 U.S.C. § 1252(d)(1); *Huang v. Mukasey*, 525 F.3d 559, 564 (7th Cir. 2008). Exhaustion is not required when there is a fundamental, substantive constitutional violation, *Bosede v. Mukasey*, 512 F.3d 946, 952 (7th Cir. 2008), but that is not the case here.

Ali has been represented by counsel throughout the deportation proceedings, yet he did not mention 8 C.F.R. § 287.3(a) before the immigration judge or before the Bureau of Immigration Appeals. Nonetheless, Ali maintains that his general argument that the immigration judge erred by relying on the Form I-213 to find him removable was sufficient to preserve his claim based on

a violation of 8 C.F.R. § 287.3(a). But a claim that Special Agent O'Sullivan should not have both questioned and arrested Ali is a much different argument than a claim that the information on the form was insufficient to find him deportable. Ali's arguments to the immigration judge and the BIA gave no hint of an argument based on his arrest by the same person who examined him, so we lack jurisdiction to review this claim. *Cf. Huang*, 525 F.3d at 564 (broad argument not sufficient to exhaust time bar issue before BIA where petitioner did not raise time bar to BIA).

## III.  CONCLUSION

Accordingly, we DENY Ali's petition for review.