# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 08-3726

_____

| | | |
|---|---|---|
| Monika Clifton, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an |
| v. | * | Order of the Board of |
| | * | Immigration Appeals. |
| Eric H. Holder, Jr., Attorney | * | |
| General of the United States, | * | [PUBLISHED] |
| | * | |
| Respondent. | * | |

_____

Submitted: September 22, 2009
Filed: March 22, 2010

_____

Before WOLLMAN, HANSEN, and SHEPHERD, Circuit Judges.

_____

HANSEN, Circuit Judge.

Monika Clifton, a native and citizen of Bulgaria, petitions for review of the Board of Immigration Appeals' (BIA) order denying her motion to remand to the immigration judge (IJ) and dismissing her appeal of the IJ's denial of her motion to reopen removal proceedings. We grant the petition for review and remand the case to the BIA for further proceedings consistent with this opinion.

I.

Clifton (formerly known as Monika Bakardjieva) is a native and citizen of Bulgaria. She was admitted to the United States in September 1993 on a student visa in order to attend Northeast Missouri State University (now Truman State University). In 1996, she traveled to Jamaica on a spring break trip with friends. She did not take along on the trip her original I-94 arrival and departure record or other immigration documents. Upon returning to the United States, Clifton was paroled into the country at St. Louis and ordered to attend a deferred inspection approximately two weeks later. Clifton asserts that she informed her foreign-student advisor at the university of the problem with her re-entry into the United States. After the conversation with her advisor, Clifton assumed the advisor would resolve the situation and did not attend the deferred inspection. Clifton acknowledges she has not subsequently been inspected and admitted. She remains an "arriving alien."

In May 1998, Clifton discontinued her enrollment at the university. Thereafter, she admittedly accepted unauthorized employment. In November 2003, Clifton was apprehended and charged with violating her immigration status and undertaking unauthorized employment. On December 4, 2003, Clifton received a notice to appear before an immigration judge (I-862) for removal proceedings. The notice alleged that Clifton is removable for two reasons: (1) she is an arriving immigrant not in possession of a valid entry document, and (2) she is a nonimmigrant not in possession of a valid nonimmigrant visa or border crossing identification card. See 8 U.S.C. § 1182(a)(7)(A)(i)(I), & (B)(i)(II). An appearance date was set for March 15, 2005.

Clifton married a U.S. citizen named Steven Clifton on February 18, 2004. Her husband filed a relative immigrant visa petition on her behalf. Clifton also filed an application to adjust her immigration status (I-485) based on the marriage. The relative immigrant visa petition was approved on October 29, 2004.

-2-

Prior to the March 15, 2005 hearing, Clifton filed a written motion in immigration court requesting either administrative closure or continuance of the removal proceedings. Clifton recognized that then-existing regulations, see 8 C.F.R. §§ 245.1(c)(8), 1245.1(c)(8) (2004), explicitly prohibited her from applying for adjustment of status in any forum because she was an arriving alien then in removal proceedings. Nonetheless, she argued the regulations were inconsistent with statutory law according to a recent opinion by the United States Court of Appeals for the First Circuit. See Succar v. Ashcroft, 394 F.3d 8, 9 (1st Cir. 2005) (holding the regulations inconsistent with 8 U.S.C. § 1255(a)).[1] Based on Succar, Clifton requested administrative closure or continuance of the removal proceedings in order to allow the United States Citizenship and Immigration Services (USCIS) "to process and adjudicate [her] Application for Adjustment of Status." (J.A. at 279.)

Clifton appeared for the March 15, 2005 hearing before the IJ. Clifton renewed her requests for administrative closure or continuance. The IJ denied closure because the Government would not agree. The IJ also denied a continuance. The transcript of the March 15 hearing demonstrates that the IJ thought she could not continue the case because she would not have jurisdiction to ultimately adjudicate the request for adjustment of status of an arriving alien in removal proceedings. As of March 15, 2005, the Eighth Circuit had not yet addressed a challenge to the regulatory bar of an IJ's jurisdiction to adjust the status of aliens in removal proceedings. See Mouelle v. Gonzales, 416 F.3d 923 (8th Cir. 2005) (approving the regulatory bar on July 29,

_____

[1]The then parallel Department of Justice and Department of Homeland Security regulations stated that aliens in removal proceedings—like Clifton—were "ineligible to apply for adjustment of status to that of a lawful permanent resident alien." See 8 C.F.R. §§ 245.1(c)(8), 1245.1(c)(8) (2004). The Succar court, followed by three other circuit courts of appeals, held the regulations were contrary to 8 U.S.C. § 1255(a), which provides that "admitted or paroled" aliens are eligible to apply for adjustment of status. See 394 F.3d at 9-10; Scheerer v. U.S. Attorney Gen., 445 F.3d 1311, 1318 (11th Cir. 2006); Bona v. Gonzales, 425 F.3d 663, 670-71 (9th Cir. 2005); Zheng v. Gonzales, 422 F.3d 98, 119-20 (3d Cir. 2005).

2005), vacated, 548 U.S. 901 (2006). Clifton's case was set for a contested case hearing on June 20, 2005.

Clifton's contested case hearing occurred on June 20, 2005. The IJ issued a written decision and order. In the procedural and factual history section of the IJ's decision, the IJ explained why Clifton's request for a continuance was denied at the previous hearing. It is again apparent that the IJ rejected a continuance based on the IJ's belief that she had no jurisdiction to adjudicate a request for adjustment of status. Turning to the merits of the removal proceedings, the IJ found both charges of inadmissibility were established, held Clifton was not eligible for voluntary departure, and ordered her to be removed.

Clifton appealed to the BIA. Clifton again cited Succar and pressed her entitlement to apply for adjustment of status.

Before the BIA could decide the appeal, the Department of Justice (DOJ) and the Department of Homeland Security (DHS) (both Departments of the Executive Branch) amended their respective administrative regulations governing adjustment of status for arriving aliens in removal proceedings. Recognizing an intercircuit conflict regarding the validity of 8 C.F.R. §§ 245.1(c)(8) and 1245(c)(8) (2004) and desiring "to avoid inconsistent application of the adjustment of status laws depending upon the geographic location of the applicant," the DOJ and DHS amended their administrative rules to allow for the adjustment of status of arriving aliens in removal proceedings. See Eligibility of Arriving Aliens in Removal Proceedings To Apply for Adjustment of Status and Jurisdiction To Adjudicate Applications for Adjustment of Status, 71 Fed. Reg. 27,585, 27,587 (May 12, 2006) (codified at 8 C.F.R. §§ 1, 245, 1001, 1245) [hereinafter "Interim Rule Notice"]. The Interim Rule Notice also explained that a second goal of the amendments was "to make clear which Departmental component has jurisdiction to adjudicate adjustment applications for arriving aliens who have been paroled and placed in removal proceedings." Id. Absent a narrow exception not

applicable to this case, the 2006 amendments vested the jurisdiction to adjust the status of arriving aliens who are in removal proceedings with USCIS, an agency within the DHS. See id.; see also Hanggi v. Holder, 563 F.3d 378, 381 (8th Cir. 2009).

In its June 30, 2006 decision, the BIA referenced the Interim Rule Notice and held that the amended regulations precluded the IJ or BIA from adjusting Clifton's status. For that reason, the BIA affirmed the IJ's holding that Clifton is removable. The BIA reversed the IJ's rejection of voluntary departure and remanded for reconsideration of voluntary departure. The BIA's decision does not reference Clifton's request for administrative closure or a continuance, which had been denied by the IJ and appealed to the BIA.

In August 2006, Clifton sent a written request to Immigration and Customs Enforcement (ICE), yet a third player and a DHS agency, asking that office's chief counsel to exercise his prosecutorial discretion and to cease prosecuting Clifton's case in order to allow her to apply for adjustment of status with USCIS. Also in August, Clifton filed a motion with the IJ for a continuance. The record does not reflect a response to either of these requests.

On October 3, 2006, Clifton's husband died of cancer.

On remand from the BIA on January 16, 2007, the IJ granted Clifton voluntary departure. The order does not mention Clifton's then pending renewed motion for continuance. The IJ originally required Clifton to depart by January 24, 2007, but the departure date was subsequently extended to May 17, 2007.

As the extended deadline for her voluntary departure granted by the IJ approached, Clifton continued to pursue her goal of legalized immigration status in two fora. First, she made two filings with USCIS. In January 2007, Clifton filed a

visa petition as the widow of a United States citizen who died within the past two years (I-360). She also filed a related request for adjustment of status (I-485) with USCIS in March 2007.

In the second forum, Clifton sought to postpone the voluntary departure granted by the IJ. Specifically, on April 10, 2007, she filed a motion with the IJ to reopen the removal proceedings and a motion to stay voluntary departure until her motion to reopen was resolved. The stay was granted by the IJ, and a hearing date was set on the motion to reopen. In support of her motion to reopen Clifton cited the Interim Rule Notice, argued that USCIS had jurisdiction to adjudicate her request for adjustment of status, and asked the IJ to reopen and stay the removal proceedings until USCIS could adjudicate her request for adjustment of status. The government resisted the motion to reopen.

The IJ denied the motion to reopen. The IJ noted that her petition as the widow of a U.S. citizen (I-360) had not yet been approved and, without an approved I-360 petition, Clifton's status could not be adjusted. Consequently, the IJ concluded that Clifton was not prima facie eligible for adjustment of status, and the IJ denied the motion to reopen. Clifton appealed to the BIA.

While Clifton's appeal was pending with the BIA, the USCIS approved her I-360 petition. On June 6, 2007, she filed another request for adjustment of status (I-485) with USCIS, based on the approved I-360.

On July 9, 2007, Clifton filed a motion with the BIA to remand the case to the IJ to admit new evidence. She wanted the USCIS notice of action (I-797) approving the I-360 to be admitted in support of her motion to reopen.

On October 28, 2008, the BIA denied Clifton's motion to remand for admission of new evidence and dismissed Clifton's appeal of the IJ's denial of the motion to

reopen. The BIA reasoned: "Even assuming that the form I-360 is approved as the respondent claims, . . . [s]ince the respondent is an arriving alien and does not come within the narrow exception which would permit an Immigration Judge to consider an arriving alien's application for adjustment of status, remand is not warranted in this case." (J.A. at 3.) The BIA also declined to reopen proceedings *sua sponte*.

Clifton then petitioned this court for review of the BIA's decision. She subsequently requested a stay of removal. We granted the stay pending our final resolution of the case.

## II.

We review both the denial of a motion to remand and the denial of a motion to reopen for abuse of discretion. Berte v. Ashcroft, 396 F.3d 993, 997 (8th Cir. 2005) (remand); Guerra-Soto v. Ashcroft, 397 F.3d 637, 640 (8th Cir. 2005) (reopen). "The BIA abuses its discretion if its decision is without rational explanation, departs from established policies, invidiously discriminates against a particular race or group, or where the agency fails to consider all factors presented by the alien or distorts important aspects of the claim." Vargas v. Holder, 567 F.3d 387, 391 (8th Cir. 2009) (quotation marks omitted). The United States Supreme Court very recently reaffirmed the federal courts' jurisdiction to review motions to reopen as well as the corresponding "deferential, abuse of discretion standard of review." Kucana v. Holder, 130 S. Ct. 827, 840 (2010).

## III.

The October 2008 BIA order from which Clifton petitions for review is a two-page per curiam order. The BIA denied the motion to remand, declined to reopen the proceedings *sua sponte*, and dismissed the appeal based on the lone rationale that "the respondent is an arriving alien and does not come within the narrow exception which

would permit an Immigration Judge to consider an arriving alien's application for adjustment of status." (J.A. at 3.) Clifton argues that rationale "ignore[s] the fact that the movant is not asking the BIA or an IJ to decide the adjustment application but only seek[s] to stay proceedings while USCIS exercises its jurisdiction over the adjustment application." (Appellant's Br. at 20.) We agree that the BIA's analysis distorted an important aspect of Clifton's claim and consequently departed from then established policies for evaluating the requested relief.

In order to hold that the BIA distorted Clifton's claim and departed from established policy, we must of course understand the forms of relief requested and the related policies. As the deadline for voluntary departure approached, Clifton petitioned USCIS for a visa as the widow of a United States citizen. Clifton alerted the IJ to her new filing with USCIS and moved the IJ to reopen her removal proceedings in light of the new information. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), 110 Stat. 3009-546, amended the Immigration and Nationality Act (INA or Act), 66 Stat. 166, 8 U.S.C. §1101 et seq., and "for the first time codified certain rules, earlier prescribed by the Attorney General, governing the reopening process." Kucana, 130 S. Ct. At 831. "The amended Act instructs that reopening motions 'shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material.'" Id. (quoting 8 U.S.C. § 1229a(c)(7)(B)). The statute does not otherwise state a standard for evaluating motions to reopen, but administrative regulations fill the statutory gap. The regulations allow an immigration judge "upon his or her own motion at any time, or upon motion of the Service or the alien, [to] reopen or reconsider any case in which he or she has made a decision, unless jurisdiction is vested with the [BIA]." 8 C.F.R. § 1003.23(b)(1). Paralleling the statute, the regulation requires that such motions "shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits and other evidentiary material." 8 C.F.R. § 1003.23(b)(3). Additionally, "[a] motion to reopen will not be granted unless the Immigration Judge is satisfied that

evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." Id.

In rejecting Clifton's motion to reopen, the IJ had noted that Clifton's visa petition as a widow was not yet approved and that she had "not established that she is prima facie eligible for the underlying relief she seeks of adjustment of status." (J.A. at 92.) Clifton appealed that ruling to the BIA. In the narrative explanation of her appeal, Clifton argued that the IJ abused its discretion by not reopening the case to consider the "imminent approval of her I-360." (Id. at 66.) In fact, the I-360 was approved shortly thereafter. Later, Clifton filed a brief with the BIA in support of her appeal and included in the brief a motion to remand the case to the IJ for consideration of the approved I-360.

Consequently, in addition to reviewing the IJ's denial of a motion to reopen, the BIA confronted a motion to remand. The BIA's authority to act on a motion to remand is not expressed in any statute, but can be found in administrative regulations. Importantly, "[t]he BIA's function is to review the record, not create it." Berte, 396 F.3d at 997; see also 8 C.F.R. § 1003.1(d)(3)(iv) ("[T]he [BIA] will not engage in factfinding in the course of deciding appeals."). Thus, "[a] party asserting that the Board cannot properly resolve an appeal without further factfinding must file a motion for remand," and "[i]f further factfinding is needed in a particular case, the Board may remand the proceeding to the immigration judge . . . ." 8 C.F.R. § 1003.1(d)(3)(iv). We have said, "the BIA will remand only if the evidence is of such a nature that the Board is satisfied that if proceedings before the IJ were reopened, with all the attendant delays, the new evidence would likely change the result in the case." Berte, 396 F.3d at 997 (internal quotations and marks omitted).

As can be seen, evaluating motions to reopen and evaluating motions to remand can be quite similar endeavors. In addition, the administrative rules allow an alien to move the *BIA* to reopen proceedings. 8 C.F.R. § 1003.2. In such cases, "[t]he

decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board . . . ."  8 C.F.R. § 1003.2(a).  "A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material."  8 C.F.R. § 1003.2(c)(1).  "A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing . . . ."  Id.  "A motion to reopen a decision rendered by an Immigration Judge . . . that is filed while an appeal is pending before the Board, may be deemed a motion to remand for further proceedings before the Immigration Judge . . . .  Such motion may be consolidated with, and considered by the Board in connection with, the appeal to the Board."  8 C.F.R. § 1003.2(c)(4).  In this case, the BIA was not considering a motion to reopen made to it in the first instance.  Instead, the BIA was considering a petition for review of a motion to reopen made to, and denied by, the IJ.

Nonetheless, the BIA has interpreted the regulations to require that "where a motion to remand is really in the nature of a motion to reopen or a motion to reconsider, it must comply with the substantive requirements for such motions."  Matter of Coelho, 20 I. & N. Dec. at 471.  "[T]he motion to remand is in the nature of a motion to reopen [when] the respondent requests additional proceedings to present evidence . . . which was not available during the initial proceedings."  Id.  While the administrative regulations and the BIA's interpretation of those regulations are a bit circular,[2] the standard for evaluating Clifton's motion to remand originating with the BIA is nonetheless clear.  Further, it is clear the applicable standard highly resembles the standard  the IJ should have used to evaluate the motion to reopen.  Additionally, the IJ and the BIA relied on one—and the same—rationale in rejecting all of Clifton's

[2]The regulations allow a motion to the BIA to reopen an IJ's decision to be considered as a motion to remand, see 8 C.F.R. § 1003.2(c)(4), while the BIA's decisions sometimes interpret a motion to remand under standards established for evaluating motions to reopen.  See Matter of Coelho, 20 I. & N. Dec. at 471.

requests for relief. The IJ and BIA rejected Clifton's requests because neither body possessed jurisdiction to adjudicate the ultimate relief sought by Clifton—adjustment of status. Consequently, Clifton's petition for review in this court can be resolved by answering one question. Does the BIA abuse its discretion by refusing to remand and reopen removal proceedings solely on the ground that the BIA lacks jurisdiction over an application for adjustment of status that has been filed with and pends before USCIS?

"[A] rote recital of a jurisdictional statement—even if technically accurate—does not adequately discharge the BIA's duty . . . ." Ni v. BIA, 520 F.3d 125, 129-30 (2d Cir. 2008). As our frequently repeated standard of review suggests, the BIA must "consider all factors presented by the alien" in light of "established policies" relevant to the alien's claim, and the BIA must provide a "rational explanation" for its decision. See Vargas, 567 F.3d at 391. The record demonstrates Clifton's goal was to reopen and continue her removal proceedings so that she was not subject to an order of removal while she pursued a prima facie valid adjustment of status application with the USCIS. The IJ has discretionary authority to continue removal proceedings where the alien presents a prima facie case for adjustment of status with the USCIS. See 8 C.F.R. § 1003.29 ("The immigration Judge may grant a motion for continuance for good cause shown."); Matter of Hashmi, 24 I. & N. Dec. 785, 788 (BIA 2009). To the extent that the BIA interpreted Clifton's motion to remand as an attempt to have the IJ decide her adjustment of status application, the BIA distorted an important aspect of Clifton's claim. See Vargas, 567 F.3d at 391 ("The BIA abuses its discretion if its decision . . . distorts important aspects of the claim."). Recognizing that the BIA does not create the record in these cases, Clifton reasonably sought remand *not* to request that the IJ adjust her status *but to bring* the newly approved I-360 to the IJ's attention in the hope that the IJ would favorably exercise the IJ's discretion to continue the case while USCIS adjudicated Clifton's prima facie valid application for adjustment of status.

-11-

The Attorney General attempts to reframe the relief Clifton is seeking as an indefinite "stay" of the execution of a final order of removal. Indeed, the BIA recently interpreted a motion to reopen that was filed with the goal of allowing USCIS to adjust status to be a motion to "stay" the execution of a final order of removal. See Matter of Yauri, 25 I. & N. Dec. 103, 109-20 (BIA 2009). The BIA held that it possessed no jurisdiction over such motions. Id. As outlined above, the BIA does have jurisdiction to remand as well as jurisdiction to reopen, and the IJ has jurisdiction to reopen and to continue removal proceedings for good cause. Once a case is reopened, there is no executable final order of removal.[3] Consequently, when reopening is granted there is no final order of removal that must be "stayed" while USCIS adjudicates a pending application for adjustment of status. Nor do we think that such a "stay" would be "indefinite." While the exact ending date of such a "stay" (if it be one) is unknown, it will end when USCIS adjudicates the pending application for adjustment of status; consequently, it is not indefinite in the sense of being open ended and without a terminating event. Thus, this case does not concern a motion to "indefinitely 'stay'" a final order of removal. Instead, Clifton asked the BIA to remand the case so that evidence could be introduced to the IJ that may affect the IJ's analysis of Clifton's motions to reopen and continue the case.

The BIA's rationale for rejecting the motion to remand—a lack of jurisdiction to adjust Clifton's status—was not relevant to the agency's then established analysis of motions to remand. Typically, such motions are only granted where the alien presents new evidence that is "of such a nature that the Board is satisfied that if proceedings before the IJ were reopened, with all the attendant delays, the new evidence would likely change the result in the case." Berte, 396 F.3d at 997 (internal quotations and marks omitted). Here, the BIA did not consider how the new evidence might affect the IJ's decision to continue the case. In so doing, the BIA departed from

_____

[3]The granting of a motion to reopen is to be distinguished from the mere filing of a motion to reopen. "[T]he filing of a motion to reopen . . . shall not stay the execution of any decision made in the case." 8 C.F.R. § 1003.2(f).

its then established policy for evaluating motions to remand.  See Vargas, 567 F.3d at 391 ("The BIA abuses its discretion if its decision . . . departs from established policies . . . .").

We do not suggest that, on remand, the BIA must remand or reopen Clifton's case.   Likewise, we do not address whether the United States Code or the corresponding administrative regulations require that removal proceedings be continued while an alien pursues a prima facie valid adjustment application with USCIS.  Although other circuits have taken up such questions on petitions for review of BIA action on motions to reopen, compare Kalilu v. Mukasey, 548 F.3d 1215, 1218 (9th Cir. 2008) (holding Interim Rule Notice "rendered worthless" when BIA denies motion to continue removal proceedings to allow USCIS to adjudicate application for adjustment of status); with Scheerer v. U.S. Attorney Gen., 513 F.3d 1244, 1255 (11th Cir.) (holding no reopening or reconsideration necessary where adjustment of status application could not be adjudicated in removal proceedings), cert. denied, 129 S. Ct. 146 (2008), we need not address those questions because the case before us can be dealt with on narrower grounds, see Zine v. Mukasey, 517 F.3d 535, 539-40 (8th Cir. 2008) (avoiding an issue of statutory interpretation of first impression where case could be resolved on narrower grounds).  Instead, the case will be remanded to the BIA for consideration of whether Clifton's motion to remand warrants a favorable exercise of the BIA's discretion.  See Ni, 520 F.3d at 131.  Regardless of how the BIA exercises its discretion, "it must provide adequate reasons for doing so, thereby furnishing this Court with a meaningful opportunity to review . . . ."  Id.

IV.

Accordingly, we grant the petition for review and remand the case to the BIA for further proceedings consistent with this opinion.

_____