# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 09-1296/3629

_____

| | | |
|---|---|---|
| Jorge Angel Puc-Ruiz, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an Order of the |
| v. | * | Board of Immigration Appeals. |
| | * | |
| Eric H. Holder, Jr., Attorney General | * | |
| of the United States, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: September 23, 2010
Filed: December 23, 2010

_____

Before RILEY, Chief Judge, MURPHY and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Jorge Angel Puc-Ruiz, a native and citizen of Mexico, petitions for review of a Board of Immigration Appeals ("BIA") decision dismissing his appeal from an Immigration Judge's ("IJ") order removing him from the United States to Mexico. Puc-Ruiz argues that the evidence of his alienage and lack of lawful status in the United States should have been suppressed because it was obtained in violation of his rights under the Fourth Amendment, Fifth Amendment, and agency regulations. Puc-Ruiz also contends that the BIA erred in affirming the IJ's denial of voluntary departure and erred in denying Puc-Ruiz's motion to strike the IJ's written decision as

ultra vires. We dismiss the petition for review from the denial of voluntary departure and deny the petition for review in all other respects.

## I. Background

Jorge Angel Puc-Ruiz is a native and citizen of Mexico. In the early morning hours of August 25, 2007, Puc-Ruiz was patronizing *Mexico on Main*, a restaurant in St. Charles, Missouri. At around 4:00 a.m., local police entered the restaurant without a warrant, apparently acting on a tip that the restaurant was serving alcohol in violation of a municipal ordinance. When asked for identification, Puc-Ruiz produced a valid Missouri driver's license. Puc-Ruiz and five other Mexican nationals were arrested and transported to the police station, where they were fingerprinted and detained. During this time, the St. Charles Police Department contacted U.S. Immigration and Customs Enforcement ("ICE"). While Puc-Ruiz was in police custody, ICE Agent Jeffrey Othic interviewed him by telephone and determined that Puc-Ruiz was an undocumented foreign national. Consequently, Agent Othic issued an immigration detainer for Puc-Ruiz, and on August 27, 2007, the St. Charles police released Puc-Ruiz to ICE custody. Then, Agent Othic conducted a second, more in-depth interview with Puc-Ruiz. During this interview, Agent Othic prepared a Form I-213, in which he memorialized the information obtained during the two interviews with Puc-Ruiz, including that Puc-Ruiz was an undocumented alien who had last entered the United States on August 15, 1998 near Douglas, Arizona without inspection. The Form I-213 also reflected the results of a computerized records search, which had returned an IDENT record indicating that Puc-Ruiz had previously elected voluntary departure after an encounter with immigration authorities in 1998, as well as Agent Othic's understanding that Puc-Ruiz had been arrested for "a municipal ordinance violation of Drinking Alcohol after 1:30 AM."

On August 28, 2007, Agent Othic personally served Puc-Ruiz with a Notice to Appear, charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(I). Agent

Othic also filed the document with the immigration court to commence removal proceedings. The following day, Puc-Ruiz was released on bond. Between one and two weeks later, he received a ticket from the St. Charles Police Department stating that he had violated a liquor license on August 25. However, there is no evidence that Puc-Ruiz ever owned or operated the establishment in which he was arrested. On October 25, 2007, the prosecuting attorney for the City of St. Charles decided not to prosecute the charge against Puc-Ruiz, and on December 17, 2007, a St. Charles municipal court judge ordered the arrest record expunged on the grounds that "the arrest . . . was based on false information" and "there [was] no probable cause at the time of the action to expunge to believe that [Puc-Ruiz] committed the offense."

Puc-Ruiz first appeared before an IJ on December 18, 2007. Following that hearing, he moved to suppress the evidence resulting from his arrest on August 25, 2007, including the I-213 form, and to terminate proceedings. Following a removal hearing on January 8, 2008, the IJ issued a summary decision denying Puc-Ruiz's motions to suppress and terminate, declining to grant his request for voluntary departure, and ordering him removed to Mexico. On February 5, 2008, Puc-Ruiz timely filed his Notice of Appeal with the BIA. On February 6, 2008, the IJ issued a written Decision and Order of the Immigration Judge, providing written reasons in support of the oral decision of January 8, 2008. The written decision explained that even if the initial arrest was improper, the manner in which ICE obtained the information relating to Puc-Ruiz was reasonable and in accordance with routine procedures. Indeed, the IJ could find "no allegations in the record of *any* misconduct on ICE's part." This being so, and because the probative value of the evidence obtained by ICE was not undermined by the "alleged improper and unrelated activities" of the St. Charles police, Puc-Ruiz's motion to suppress was denied. Additionally, the IJ explained that Puc-Ruiz's request for voluntary departure was denied "as a matter of discretion."

On March 4, 2008, Puc-Ruiz filed a motion to strike the IJ's written decision, arguing that the order was filed after the IJ had been divested of jurisdiction over the case. In a written decision on January 13, 2009, a three-member panel of the BIA affirmed the IJ's decision and denied Puc-Ruiz's motion to strike. The BIA agreed with the IJ that because ICE officers had no role in Puc-Ruiz's arrest or initial detention, "the information relating to [Puc-Ruiz's] alienage was not tainted and thus is not subject to suppression." Further, the BIA held that Puc-Ruiz's due process and regulatory claims failed because there was no fundamental unfairness in the process by which Agent Othic obtained information about Puc-Ruiz's identity or alienage, and ICE had not violated agency regulations. The BIA also found that the IJ's written decision of February 6, 2008 was properly issued and that the IJ's denial of voluntary departure was not an abuse of discretion. Puc-Ruiz timely filed a motion for reconsideration, which was denied on October 28, 2009. This appeal follows.

## II. Discussion

Pursuant to the REAL ID Act of 2005, we retain jurisdiction to review "constitutional claims or questions of law" raised upon a petition for review challenging a removal order. 8 U.S.C. § 1252(a)(2)(D). "When the BIA adopts and affirms the IJ's decision, but also adds reasoning of its own, we will review both decisions together." Chen v. Mukasey, 510 F.3d 797, 800 (8th Cir. 2007). We review questions of law de novo but accord substantial deference to the BIA's interpretation of immigration statutes and regulations. Lateef v. Dep't of Homeland Sec., 592 F.3d 926, 929 (8th Cir. 2010). "We review the agency's findings of fact for substantial evidence under the statutory standard for immigration cases: '[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Chen, 510 F.3d at 800 (quoting 8 U.S.C. § 1252(b)(4)(B)).

A.  Motion to Suppress

(i)  Fourth Amendment claim

Puc-Ruiz seeks to suppress all statements and documentation regarding his national origin and citizenship obtained by ICE—including the Form I-213 prepared by ICE Agent Othic—as a result of his arrest by the St. Charles police.[1]  He argues that St. Charles police officers egregiously violated his Fourth Amendment rights by arresting him without probable cause, and, therefore, the use of any evidence resulting from that arrest would render his removal proceedings fundamentally unfair under the Fifth Amendment.  Without the Form I-213, Puc-Ruiz contends, the government cannot meet its burden of proving his alienage and removability, and so his removal proceedings should be terminated.

The United States Supreme Court has held that the exclusionary rule generally does not apply in civil deportation hearings because the likely costs of excluding probative evidence outweigh the likely social benefits.  INS v. Lopez-Mendoza, 468 U.S. 1032, 1039–42 (1984).

> Important as it is to protect the Fourth Amendment rights of all persons, there is no convincing indication that application of the exclusionary rule in civil deportation proceedings will contribute materially to that end. On the other side of the scale, the social costs of applying the exclusionary rule in deportation proceedings are both unusual and significant.

---

[1]"The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."  INS v. Lopez-Mendoza, 468 U.S. 1032, 1039–40 (1984).  However, Puc-Ruiz is not seeking to suppress his identity, but rather evidence relating to his alienage, which is suppressible.  See id. at 1040.

Id. at 1046. The costs of suppression in this context are "unusual and significant" because a deportation hearing's purpose "is not to punish past transgressions but rather to put an end to a continuing violation of the immigration laws" by "provid[ing] a streamlined determination of eligibility to remain in this country." Id. at 1039. Thus, suppression "would require the courts to close their eyes to ongoing violations of the law" by compelling them "to release from custody persons who would then immediately resume their commission of a crime through their continuing, unlawful presence in this country." Id. at 1046–1050. "Even the objective of deterring Fourth Amendment violations should not require such a result." Id. at 1047.

However, the Court limited its holding to circumstances that do not involve "egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained." Id. at 1050–51.[2] Puc-Ruiz argues that the Lopez-Mendoza Court's reasoning applies in the instant case because the deterrent value of applying the exclusionary rule in a federal civil deportation proceeding is at least as great when the target of the rule's deterrent effect is state criminal enforcement officers rather than federal immigration agents.[3] The government counters that application of the exclusionary rule in this context is precluded by the Supreme Court's holding in

---

[2]Although only three other Justices joined the part of Justice O'Connor's majority opinion where the exception for "egregious" constitutional violations appears, the four dissenters contended that the exclusionary rule applies in the civil and the criminal contexts alike, and would have approved any limitation on the majority's decision. 468 U.S. at 1051–61 (Brennan, White, Marshall, and Stevens, JJ., dissenting); see also Gonzalez-Rivera v. INS, 22 F.3d 1441, 1448 n.2 (9th Cir. 1994) (reaching the same conclusion). Accordingly, it is reasonable to read Lopez-Mendoza as showing that eight justices would have applied the exclusionary rule in circumstances where evidence was obtained through an "egregious" Fourth Amendment violation.

[3]Counsel for Puc-Ruiz confirmed at oral argument that he is not alleging any Fourth Amendment violations on the part of ICE agents.

United States v. Janis, 428 U.S. 433 (1976). In Janis, the Court held that evidence gathered in violation of the Fourth Amendment by state police should not be excluded in a federal civil tax proceeding because "common sense dictates that the deterrent effect of the exclusion of relevant evidence is highly attenuated when the 'punishment' imposed upon the offending criminal enforcement officer is the removal of that evidence from a civil suit by or against a different sovereign." 428 U.S. at 457–58. Puc-Ruiz contends that Janis is distinguishable. It is unnecessary for us to decide this issue because, regardless, we conclude that the police conduct at issue in this case does not rise to the level of an "egregious" Fourth Amendment violation. 468 U.S. at 1046.

What constitutes an "egregious" Fourth Amendment violation under Lopez-Mendoza is a matter of first impression for this Court. The probative value of the evidence obtained as a result of Puc-Ruiz's arrest is undisputed; we therefore examine whether the alleged Fourth Amendment violation was sufficiently egregious to "transgress notions of fundamental fairness." In introducing the egregiousness exception, the Lopez-Mendoza Court cited Rochin v. California, 342 U.S. 165 (1952), as an example of an egregious constitutional violation. In Rochin, police officers recovered narcotics, which the defendant had swallowed, by forcing the defendant to swallow an emetic solution to induce vomiting. Id. at 166. The Rochin Court held that such "brutal conduct," which "shocks the conscience" and "offend[s] the community's sense of fair play and decency," constitutes an egregious constitutional violation. 342 U.S. at 172–73.

While "egregious" violations are not limited to those of physical brutality, Gonzalez-Rivera v. INS, 22 F.3d 1441, 1449 (9th Cir. 1994), Lopez-Mendoza requires more than a violation to justify exclusion, Almeida-Amaral v. Gonzales, 461 F.3d 231, 236 (2d Cir. 2006) ("[W]hile the lack of any valid basis whatsoever for a seizure sets the stage for egregiousness, more is needed."). There is no evidence in the record that the St. Charles police employed an unreasonable show or use of force in arresting and

detaining Puc-Ruiz. <u>Cf.</u> <u>Lopez-Mendoza</u>, 468 U.S. at 1051 (finding that credible evidence gathered in connection with "peaceful arrests by INS officers" need not be suppressed in an INS civil deportation hearing). Additionally, Puc-Ruiz has not argued that the decision to arrest him was based on his race or appearance. <u>See, e.g.</u>, <u>Almeida-Amaral</u>, 461 F.3d at 237 (holding that deciding to stop an individual solely on the basis of his race is an egregious constitutional violation); <u>Gonzalez-Rivera</u>, 22 F.3d at 1449–52 (same). This is not an exhaustive list of the conduct that could constitute an egregious constitutional violation. However, Puc-Ruiz has made no allegations of police misconduct beyond his assertion that the arresting officers lacked probable cause at the time of his arrest. Moreover, this is not a case in which police officers invaded private property and detained individuals with *no* articulable suspicion whatsoever. The record indicates that the arresting officers were acting on information provided to them by the wife of one of the arrestees that alcohol was being consumed on the premises of *Mexico on Main*, in violation of a municipal ordinance. Based on the record before us, therefore, we are unable to conclude that the St. Charles police perpetrated an *egregious* violation of Puc-Ruiz's Fourth Amendment rights.

### (ii) Due Process claim

Next, Puc-Ruiz argues that suppression is required because the post-arrest conduct of ICE agents deprived him of due process within the meaning of the Fifth Amendment. Specifically, Puc-Ruiz contends that ICE's failure to inform Puc-Ruiz of his rights or provide an explanation for his arrest, and the coercive nature of Agent Othic's questioning, transgressed notions of fundamental fairness. We reject this argument for two reasons. First, the Fifth Amendment states only that no person "shall be compelled in any *criminal* case to be a witness against himself." U.S. Const. amend. V. A removal hearing is a civil proceeding, and the fact that an alien has not received <u>Miranda</u>-like warnings will not render his statements inadmissible in a deportation hearing. <u>See, e.g.</u>, <u>United States v. Alderete-Deras</u>, 743 F.2d 645, 647–48

(9th Cir. 1984); <u>Chavez-Raya v. INS</u>, 519 F.2d 397, 402 (7th Cir. 1975). Second, an alien must show coercion, duress, or improper action on the part of the immigration officer in order to demonstrate that his statements were involuntary. <u>Bustos-Torres v. INS</u>, 898 F.2d 1053, 1057 (5th Cir. 1990). The BIA expressly affirmed the IJ's finding that Puc-Ruiz's statements were made voluntarily, and substantial evidence supports this determination.

We accept the BIA's factual determinations so long as they are supported by substantial evidence on the record, <u>Lateef</u>, 592 F.3d at 929, and we give much weight to the credibility determinations of the IJ, <u>Al Milaji v. Mukasey</u>, 551 F.3d 768, 772 (8th Cir. 2008). Puc-Ruiz points to no evidence in the record rebutting Agent Othic's testimony that Puc-Ruiz answered questions freely and that his answers were forthcoming. Puc-Ruiz's affidavit does not mention any misconduct by ICE agents and contains no reference to Puc-Ruiz's interviews with Agent Othic. Indeed, the only suggestions of coercion or duress during Puc-Ruiz's interviews with Agent Othic derive from counsel's unsupported assertions in Puc-Ruiz's brief, to which we accord no weight. <u>INS v. Phinpathya</u>, 464 U.S. 183, 188 n.6 (1984). Consequently, we conclude that the BIA did not err in affirming the IJ's determination that Puc-Ruiz's statements to Agent Othic regarding his alienage and lack of lawful status in the United States were voluntarily made and need not be suppressed.

### (iii) Regulatory claim

Finally, Puc-Ruiz contends that suppression is required because ICE violated agency regulations 8 C.F.R. §§ 287.3(a) and (c). Section 287.3(a) requires that an alien arrested without a warrant and placed in removal proceedings be interviewed by an immigration officer other than the arresting officer, unless no other qualified officer is readily available and locating one would entail unnecessary delay. Section 287.3(c) requires that such an alien be advised of the reasons for his arrest, of his right to legal representation, and that any statement made may be used against him in a subsequent

proceeding. Additionally, § 287.3(c) requires that the alien be given a list of the free legal services available in the district where the hearing will be held.

Under the BIA's case law, a regulatory violation can result in the exclusion of evidence if the regulation in question serves a purpose of benefit to the alien and the violation prejudiced interests of the alien which were protected by the regulation. In re Garcia-Flores, 17 I. & N. Dec. 325, 328 (BIA 1980). "As a general rule, . . . prejudice will have to be specifically demonstrated," unless compliance with the regulation is mandated by the Constitution, in which case prejudice may be presumed. Id. at 329 (citing United States v. Calderon-Medina, 591 F.2d 529, 532 (9th Cir. 1979)); see also Leslie v. Attorney Gen. of U.S., 611 F.3d 171, 175–80 (3d Cir. 2010). To demonstrate prejudice, the alien must show that the regulatory violation harmed his interests "in such a way as to affect potentially the outcome of [his] deportation proceeding." In re Garcia Flores, 17 I. & N. Dec. at 328; accord Ram v. Mukasey, 529 F.3d 1238, 1242 (9th Cir. 2008).

The BIA "decline[d] to find that a regulatory violation occurred" because there was no evidence in the record demonstrating either that another officer, other than Agent Othic, was available to interview Puc-Ruiz or that Agent Othic failed to properly warn Puc-Ruiz that any statement he made could be used against him in subsequent proceedings. The BIA may have erred in shifting the burden to Puc-Ruiz to demonstrate that ICE did not comply with agency regulations. See, e.g., Singh v. Mukasey, 553 F.3d 207, 216 (2d Cir. 2009) (finding that the government had not established compliance with 8 C.F.R. § 287.3(a) where "[t]he record does not show that no other qualified officer was available to examine [the alien]."). However, we find that any error was harmless because Puc-Ruiz has not demonstrated prejudice.

Compliance with 8 C.F.R. §§ 287.3(a) and (c) is not constitutionally mandated and therefore prejudice cannot be presumed. In re Garcia-Flores, 17 I. & N. Dec. at 329 (finding that an alleged violation of the "warning" requirements set forth in 8

-10-

C.F.R. § 287.3 could not be presumed to have prejudiced the respondent's interests); Ali v. Gonzales, 440 F.3d 678, 682 (5th Cir. 2006) (finding prejudice cannot be presumed for violations of 8 C.F.R. § 287.3); Navarro-Chalan v. Ashcroft, 359 F.3d 19, 23 n.3 (1st Cir. 2004) (same); Martinez-Camargo v. INS, 282 F.3d 487, 492 (7th Cir. 2002) (finding that compliance with § 287.3(a) is not constitutionally mandated and therefore prejudice cannot be presumed); Mosqueda-Araujo v. Gonzales, 135 Fed. App'x 87, 88 (9th Cir. 2005) (unpublished) (same). Puc-Ruiz has not shown that the alleged regulatory violations potentially affected the outcome of his deportation proceeding. In his brief, Puc-Ruiz contends that he was intimidated by Agent Othic because Agent Othic was the agent responsible for placing Puc-Ruiz in ICE custody, and had a different ICE agent conducted the second interview, Puc-Ruiz would not have divulged any information about his national origin and citizenship. Similarly, he claims that had he been informed that any statements he made could be used against him in future proceedings, he would have remained silent during his interviews with Agent Othic. And had he been provided with a list of legal service providers, he would have obtained counsel, who would have advised him not to answer Agent Othic's questions. Under none of these hypothetical scenarios would the outcome of Puc-Ruiz's deportation proceeding have been different, however.

To meet its burden of establishing removability by clear and convincing evidence, 8 U.S.C. § 1229a(c)(3), the government must only show identity and alienage; then the burden shifts to the alien to prove he is lawfully present in the United States pursuant to a prior admission, 8 U.S.C. §§ 1229a(c)(2), 1361; see also Almeida-Amaral, 461 F.3d at 234. Critically, Puc-Ruiz cannot demonstrate that ICE would have failed to discover his alienage or immigration status absent his statements to Agent Othic while in ICE custody. Assuming, without deciding, that Puc-Ruiz is correct in identifying Agent Othic as the "arresting officer" for purposes of 8 C.F.R. § 287.3, any regulatory violations by ICE agents must necessarily have occurred after Puc-Ruiz was transferred to ICE custody. Since 8 C.F.R. § 287.3(a) directs that, if possible, the alien should be examined by an officer other than the

-11-

arresting officer, any violation of the regulation must necessarily have occurred after Puc-Ruiz had been taken into ICE custody by Agent Othic. Similarly, because 8 C.F.R. § 287.3(c) requires that the *examining* officer give certain information and warnings, any violation would have had to occur after Puc-Ruiz was in ICE custody. But the record indicates that Puc-Ruiz had already admitted his alienage and illegal status to Agent Othic during the telephonic interview that occurred while Puc-Ruiz was in the custody of the St. Charles police. Thus, the second interview, during which Agent Othic memorialized Puc-Ruiz's prior statements on the Form I-213, did not generate any additional information. See Martinez-Camargo, 282 F.3d at 492 (reaching the same conclusion on similar facts). Further, even if Puc-Ruiz had never made any statement to Agent Othic, ICE could have established Puc-Ruiz's removability from the routine booking information collected by the St. Charles police. For example, Agent Othic could have run Puc-Ruiz's name through the same records checks, which would have produced the same computerized IDENT record showing that Puc-Ruiz is a Mexican citizen who had previously elected voluntary departure after an encounter with immigration authorities in 1998. Thus, Puc-Ruiz has not demonstrated prejudice, and we therefore conclude that if BIA erred in finding that ICE did not violate any agency regulations, the error was harmless.

## B. Motion to Strike the Immigration Judge's Written Decision

Puc-Ruiz argues that the BIA erred in denying his motion to strike the IJ's written decision because the decision was authored after Puc-Ruiz filed his Notice of Appeal and, therefore, after the IJ was divested of jurisdiction over the case. In its October 28, 2009 decision denying Puc-Ruiz's motion for reconsideration, the BIA held that even if the IJ's written decision is ultra vires, the denial of Puc-Ruiz's motion to strike was harmless error as no prejudice resulted. We agree.

This Court reviews for abuse of discretion a denial by the BIA of a motion to remand. Clifton v. Holder, 598 F.3d 486, 490 (8th Cir. 2010). The abuse-of-

discretion standard is "highly deferential" to the BIA's decision. Averianova v. Holder, 592 F.3d 931, 936 (8th Cir. 2010). Nonetheless, the BIA abuses its discretion when it "departs from established policies." Clifton, 598 F.3d at 490. Under BIA precedent and established policy, an IJ loses jurisdiction over a removal case once the alien files a Notice of Appeal with the BIA. In re Aviles, 15 I. & N. Dec. 588, 588 (BIA 1976); In re Mintah, 15 I. & N. Dec. 540, 541 (BIA 1975); Board of Immigration Appeals Practice Manual § 4.2(a)(ii). When the IJ lacks jurisdiction, his decisions are nullities. In re Mintah, 15 I. & N. Dec. at 541. Because Puc-Ruiz filed his Notice of Appeal with the BIA on February 1, 2008, the IJ's written decision, issued on February 6, 2008, was ultra vires and thus a nullity. In its January 13, 2009 decision, the BIA acknowledged that the IJ's oral decision and memorandum did not meet the substantive requirements of 8 C.F.R. § 1240.12(a), which demands that the IJ's decision must include a finding on removability, reasons for the finding, and a final order of the IJ. The BIA has an established policy of remanding a removal case when the IJ fails to issue a decision that complies with the substantive requirements of § 1240.12(a). In re A-P-, 22 I. & N. Dec. 468, 477 (BIA 1999). Thus, in its January 13, 2009 decision, the BIA erred in denying Puc-Ruiz's motion to strike.

However, Puc-Ruiz has not demonstrated that the outcome would have been any different but for the BIA's error. When the IJ issues a decision that fails to comply with the substantive requirements of 8 C.F.R. § 1240.12(a), the only remedy is to remand to the IJ for preparation of a full decision. In re A-P-, 22 I. & N. Dec. at 468. Puc-Ruiz has pointed to no factual or legal inconsistencies between the IJ's oral and written decisions, and has proffered no other evidence indicating that, upon remand, the IJ would do anything other than re-issue the same written decision that was improperly issued on February 6, 2008. Consequently, we find that the BIA's error was harmless and decline to remand on this issue.

## C. Denial of Application for Voluntary Departure

Finally, Puc-Ruiz argues that the IJ's denial of his request for voluntary departure violated his constitutional rights under the Fifth Amendment's guarantees of equal protection and due process. This Court lacks jurisdiction to review the discretionary denial of voluntary departure under 8 U.S.C. § 1229c, 8 U.S.C. § 1252(a)(2)(B)(i), unless the denial raises "a colorable constitutional claim or question of law." Garcia-Aguillon v. Mukasey, 524 F.3d 848, 849 (8th Cir. 2008). We must "keep[] in mind that a petitioner may not create jurisdiction by cloaking an abuse of discretion argument in constitutional or legal garb." Id. (internal quotations omitted). If the constitutional claim concerns due process, then the petitioner must also demonstrate that the violation resulted in actual prejudice, defined as whether an alternate result "may well have resulted" without the violation. Al Khouri v. Ashcroft, 362 F.3d 461, 466 (8th Cir. 2004).

Puc-Ruiz argues that the IJ denied him both due process and equal protection of the law by issuing the denial as a punitive reaction to Puc-Ruiz's exercise of his right to remain silent during the deportation hearing. Puc-Ruiz relies on the IJ's statement that "[s]omeone that comes into my court and won't admit alienage is not going to be entitled to voluntary departure as a matter of my discretion." This statement was made in denying a request for voluntary departure made by Isai Garcia-Torres, another illegal immigrant who had been arrested along with Puc-Ruiz and whose case was adjudicated prior to Puc-Ruiz's, during the same deportation hearing. Puc-Ruiz contends that this statement indicates that the IJ intended to punish anyone who exercised their right to silence in order to preserve their claims on appeal. However, the IJ's arguably objectionable statement was made with reference to Garcia-Torres, and not Puc-Ruiz. In denying Puc-Ruiz's request for voluntary departure, the IJ explained that he denied the request based on Puc-Ruiz's presence in the United States after having previously been granted voluntary departure. Additionally, in his written decision, the IJ explicitly acknowledged the necessity of

Puc-Ruiz's silence in order to preserve for appeal his constitutional suppression claim. Consequently, there is substantial evidence in the record to support the BIA's finding that the IJ based his decision on the fact that Puc-Ruiz had previously been granted voluntary departure, and not on Puc-Ruiz's choice to remain silent at his hearing. Because Puc-Ruiz's argument amounts to nothing more than a challenge to the IJ's discretionary and fact-finding exercise, it must be dismissed for lack of jurisdiction. Garcia-Aguillon, 524 F.3d at 850; Garcia-Mateo v. Keisler, 503 F.3d 698, 700 (8th Cir. 2007).

Next, Puc-Ruiz contends that the IJ violated Puc-Ruiz's due process rights and denied him a "fundamentally fair" hearing by refusing to hear case-specific evidence and instead denying Puc-Ruiz's request for voluntary departure based upon a categorical rule. Again, Puc-Ruiz relies on the arguably objectionable statement made by the IJ in denying Isai Garcia-Torres's request for voluntary departure, arguing that the IJ had pre-decided Puc-Ruiz's case even before he took the stand based on an anticipated exercise of his right to silence. Alternatively, Puc-Ruiz asserts that if the IJ denied the request based on the fact that Puc-Ruiz had previously been granted voluntary departure, the IJ still demonstrated an impermissible degree of pre-decision by failing to inquire into any countervailing discretionary factors. Puc-Ruiz contends that this error was prejudicial because it resulted in an underdeveloped record. Even if Puc-Ruiz had raised a colorable due process claim on this ground, however, he has failed to demonstrate prejudice. Neither in his appeal to the BIA nor in his instant appeal has Puc-Ruiz presented a single favorable factor or any countervailing equities that might have weighed against the IJ's decision to deny his present request for voluntary departure on the basis of Puc-Ruiz's presence in the United States after having previously been granted voluntary departure.

### III.  Conclusion

For the reasons stated above, we dismiss the petition for review from the denial of voluntary departure and deny the petition for review in all other respects.

_____