# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-2307

———————

| | | |
|---|---|---|
| Jose Garcia-Torres, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Petition for Review of |
| | * | an Order of the Board |
| Eric Holder, Attorney General of | * | of Immigration Appeals. |
| the United States, | * | |
| | * | |
| Respondent. | * | |

———————

Submitted: March 15, 2011
Filed: October 28, 2011

———————

Before LOKEN and COLLOTON, Circuit Judges, and NELSON,* District Judge.

———————

NELSON, District Judge.

Jose Garcia-Torres, a native and citizen of Mexico who entered the United States in February 1997 without admission or parole, petitions for review of a decision of the Board of Immigration Appeals ("BIA") that dismissed his appeal,

———————————————

*The Honorable Susan Richard Nelson, United States District Court for the District of Minnesota, sitting by designation.

finding that the evidence of his alienage was admissible and that removal was proper despite the hardship he alleged it would impose on his family.

We deny the petition.

## I.   BACKGROUND

At about 4:00 a.m. on August 25, 2007, St. Charles, Missouri police officers, acting on a tip that alcohol was being consumed in violation of a local ordinance prohibiting drinking after 1:30 a.m., entered, without a warrant, a restaurant named "Mexico on Main."  Inside they arrested several individuals, including Petitioner, a co-owner of the restaurant, and Jorge Angel Puc-Ruiz.  But the local prosecutor later found no probable cause for the arrest and charges were never filed against them.

Nevertheless, in the interim, they were transferred to the custody of Immigration and Customs Enforcement ("ICE").  As ICE officer Jeffrey Othic explained, ICE does "a lot of outreach" with local law enforcement agencies, which "routine[ly]" notify ICE when they suspect that individuals they have in custody might be foreign nationals without evidence of their immigration status. (App. at 95, 116, 135.) Othic then interviewed Petitioner and Puc-Ruiz and prepared a Form I-213 for each.  Othic testified that Petitioner's answers were given freely.  As Petitioner and Puc-Ruiz appeared to be in the U.S. illegally, ICE issued immigration detainers and Notices to Appear in removal proceedings.

Petitioner moved to suppress the I-213 and all evidence obtained as a result of the arrest.  He also moved to terminate the proceedings, contending that the Government failed to prove alienage and removability.  The Immigration Judge (IJ) denied both motions. Petitioner then applied for cancellation of removal and, in the alternative, voluntary departure.  The IJ also denied those applications.  Petitioner appealed to the BIA, which dismissed his appeal.  This petition followed.

## II. DISCUSSION

### A. Scope of Review

The appeal from the BIA's decision implicates two separate rulings by the IJ: (1) the denial of Petitioner's application to suppress evidence of his alienage, and (2) the denial of his application to cancel the order for his removal. Appellate review of the second issue, however, is confined by statute to only "constitutional claims or questions of law," and does not extend to discretionary decisions by the BIA. 8 U.S.C. § 1252(a)(2)(A); Puc-Ruiz v. Holder, 629 F.3d 771, 777 (8th Cir. 2010).

### B. Exclusionary Rule in Alien Removal Proceedings

Although the Government bears the burden of establishing removability by clear and convincing evidence, it "must only show identity and alienage; then the burden shifts to the alien to prove he is lawfully present in the United States pursuant to a prior admission." Puc-Ruiz, 629 F.3d at 781. Petitioner first argues that he may not be legally removed from the United States because certain evidence of his alienage was obtained through "an egregious, bad faith violation of the Fourth Amendment prohibition against unreasonable searches and seizures." (Br. at 11.) He claims that only the local officers' actions, not any taken by ICE, violated the Search and Seizure Clause. He also separately claims that admitting the evidence would violate his "Fifth Amendment due process right to a fundamentally fair removal hearing." (Id.)

### 1. Standard of Review

In removal actions, we apply a *de novo* standard of review to issues of law "but accord substantial deference to the BIA's interpretation of immigration statutes and regulations." Puc-Ruiz v. Holder, 629 F.3d 771, 777 (8th Cir. 2010). With respect to the agency's findings of fact, we review for substantial evidence under the governing statutory standard: "'[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Id. (quoting Chen v. Mukasey, 510 F.3d 797, 800 (8th Cir. 2007)).

## 2. Application Of The Exclusionary Rule

In <u>Immigration and Naturalization Service v. Lopez-Mendoza</u>, the Supreme Court applied a balancing test to determine whether the exclusionary rule, which is generally applied only in criminal proceedings, should also apply in civil deportation proceedings. 468 U.S. 1032, 1040-50 (1984). Applying the "framework," "imprecise as the exercise may be," set forth in <u>United States v. Janis</u>, 428 U.S. 433 (1976), the Court analyzed various factors to weigh "the likely social benefits of excluding unlawfully seized evidence against the likely costs." <u>Id.</u> at 1041. Although the factors that weighed against applying the exclusionary rule in civil tax proceedings in <u>Janis</u> might not apply in the deportation context, the Court reached "the same conclusion as in Janis" based on "several other factors [that] significantly reduce the likely deterrent value of the exclusionary rule in a civil deportation proceeding." <u>Id.</u> at 1043.[1] The Court concluded that the exclusionary rule does *not* apply "in an INS civil deportation hearing" conducted solely to determine if the alien is eligible to

---

[1] In <u>Janis</u>, although a state law enforcement officer seized evidence unconstitutionally, the Supreme Court declined to apply the exclusionary rule in a separate federal civil tax proceeding because "two factors" rendered any deterrence provided by that rule merely marginal in the federal civil proceeding: (1) "the local law enforcement official is already punished by the exclusion of the evidence in the state criminal trial," and (2) "the evidence is also excludable in the federal criminal trial." 428 U.S. at 448. The Court thus articulated the "inter-sovereign rule"–that "the additional marginal deterrence provided by forbidding a different sovereign from using the evidence in a civil proceeding surely does not out weigh the costs to society of extending the rule to that situation." <u>Id.</u> at 454-55. In <u>Lopez-Mendoza</u>, the Court confronted no similar inter-sovereign issue because the aliens were arrested by INS agents, and further recognized that deportation proceedings are rarely accompanied even by federal criminal proceedings. 468 U.S. at 1042-43 (acknowledging that "only a very small percentage of arrests of aliens . . . lead to [federal] criminal prosecutions").

remain in the U.S., not to criminally punish any unlawful entry, even though that is a crime.[2]

In Lopez-Mendoza, the Court cautioned, however, that it was not dealing "with egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained." 468 U.S. at 1051. Rather, it faced the issue of "the exclusion of credible evidence gathered in connection with peaceful arrests by INS officers." Id. This Court has expressed doubt whether even an egregious violation by state or local officers could justify exclusion in a federal immigration proceeding, Lopez-Gabriel v. Holder, 653 F.3d 683, 686 (8th Cir. 2011), but the government does not raise that point here, so we need not decide it. Cf. Janis, 428 U.S. at 459-60.

Assuming for the sake of analysis that an egregious constitutional violation by local officers could justify exclusion of evidence in a federal immigration proceeding, there is no basis for exclusion in this case. Here, the local police officers entered the premises acting on a tip that a liquor ordinance was being violated. Petitioner points to nothing more than a warrantless entry of business premises and arrest, mere garden-variety error, if a Fourth Amendment violation at all. He contends that he "was apprehended while inside a restaurant which he co-owned" by officers who

---

[2]Because we likewise face only a civil deportation action, cases relied upon by Petitioner such as United States v. Flores-Sandoval, 422 F.3d 711 (8th Cir. 2005), and United States v. Guevara-Martinez, 262 F.3d 751 (8th Cir. 2001), are not relevant as they were criminal actions brought to punish violations of the law prohibiting illegal reentry after deportation.

entered it "without a warrant and without [his] consent." (Br. at 20; accord id. at 22.)[3] But there is no evidence of any "egregious conduct."[4]

In sum, even assuming that the search and seizure here constituted a violation of the Fourth Amendment, any such violation is not "egregious." In addition to his Fourth Amendment argument, Petitioner also alleges a violation of the Due Process Clause of the Fifth Amendment, claiming that he was denied a "fundamentally fair removal hearing." But his due process claim simply reiterates his Fourth Amendment claim that "[l]aw enforcement officers entered [the] establishment without a warrant and without the consent of Mr. Garcia-Torres." (Br. at 20; id. at 24 (premising his Fifth Amendment argument on "the same reasons that the above actions of law enforcement were so egregious as to require suppression under the Fourth Amendment"); id. at 25 (asserting that violation of Fourth Amendment by admitting purportedly excludable evidence "also violated" his Fifth Amendment rights).) All claims of an unconstitutional search or seizure must be addressed solely in terms of the Fourth Amendment, not the "fundamental fairness" requirement "under a 'substantive due process' approach." Graham v. Connor, 490 U.S. 386, 388, 395 (1989). Accord County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (reiterating that "substantive due process analysis is therefore inappropriate" where

---

[3]Petitioner also argues that the officers confirmed that the establishment's liquor license was solely in his wife's name but that he was arrested anyway. But this is irrelevant insofar as the tip on which the officers had acted was that "the restaurant was serving alcohol in violation of a municipal ordinance." 629 F.3d at 775.

[4]We decline to adopt the Ninth Circuit's standard that Petitioner advocates, that is, that an "egregious violation" is nothing more than a "bad faith" violation, and that such bad faith exists simply where "a reasonable officer should have known that the conduct at issue violated the Constitution." (Br. at 19 (citing Gonzalez-Rivera, 22 F.3d 1441, 1447-48 (9th Cir. 1994).) Such a standard would likely eviscerate Lopez-Mendoza insofar as the Fourth Amendment prohibits only "unreasonable" searches and seizures and the Ninth Circuit's standard applies whenever "a reasonable officer should have known" his conduct was illegal.

a claim "is 'covered by' the Fourth Amendment"). Here, Petitioner's due process arguments are nothing more than claims that fall squarely within the ambit of the Fourth Amendment. Thus, any evidence that ICE obtained, by virtue of Petitioner's arrest by local officers, was admissible and sufficient to establish Petitioner's alienage and removability.

### C.    Cancellation of Removal

Petitioner also argues that even if the evidence at issue is admissible and establishes that he is subject to removal, the BIA erred by not granting his application for cancellation of removal under 8 U.S.C. § 1229b. An alien otherwise subject to deportation may obtain a cancellation of removal if he shows that: (1) he has been physically present in the U.S. for at least ten years; (2) he has been a person of "good moral character"; (3) he has not been convicted of certain immigration offenses; and (4) his "removal would result in *exceptional and extremely unusual* hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1) (emphasis added). Here, Petitioner argues only that his removal would cause hardship for his wife and infant son. In particular, he contends that the BIA applied an incorrect legal standard in assessing the hardships his wife and child would face if he were removed to Mexico.

But "'no court shall have jurisdiction to review ... any judgment regarding the granting of relief under section ...1229b.'" Gomez-Perez v. Holder, 569 F.3d 370, 372 (8th Cir. 2009) (quoting 8 U.S.C. § 1252(a)(2)(B)). Courts may, however, review "constitutional claims or questions of law raised upon a petition for review." Id. (quoting 8 U.S.C. § 1252(a)(2)(D)). In short, although we lack "jurisdiction to review the discretionary denial of cancellation of removal under § 1229b," we have "jurisdiction to review constitutional claims or questions of law." Id. (quoting Pinos-Gonzalez v. Mukasey, 519 F.3d 436, 439 (8th Cir. 2008)). We have cautioned "that a petitioner may not create jurisdiction by 'cloaking an abuse of discretion argument

in constitutional [or legal] garb.'" <u>Garcia-Aguillon v. Mukasey</u>, 524 F.3d 848, 849 (8ᵗʰ Cir. 2008) (quoting <u>Sabhari v. Mukasey</u>, 522 F.3d 842, 844 (8ᵗʰ Cir. 2008)).

Petitioner alleges two errors: (1) "the Agency failed to cognize the hardship caused by [Petitioner's son] being completely unable to see his mother if [Petitioner] were removed;" and (2) "the Agency considered the other hardships presented only individually, rather than cumulatively." (Br. at 31.) With respect to the second alleged error, Petitioner contends that the BIA "did not make a mere mistake in balancing the evidence; rather, the Agency applied an incorrect legal standard by failing to account for the cumulative effect of the hardships presented." (Br. at 28.) The Government contends that Petitioner is seeking to evade the prohibition against appellate review of this discretionary decision by recasting his evidentiary arguments as presenting issues of law. We agree that this Court lacks jurisdiction to review the BIA's hardship determination because, while Petitioner attempts to present his issues as questions of law, the hardship determination actually constitutes a discretionary decision barred from appellate review.

Accordingly, we deny the petition.

_____